Filed 11/28/22 In re R.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. PEDRO C., Defendant and Appellant. | F084681 (Super. Ct. Nos. JJV066145B, JJV066145C) **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County. John P. Bianco, Judge.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, and Jason G. Chu, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Smith, J. and Meehan, J.

**INTRODUCTION**

Pedro C. (father) and Ro.C. (mother) are the parents of R.C. (born November 2005) and P.C. (born September 2007) (collectively, the children).[1] Father appeals the juvenile court's order terminating his parental rights to the children pursuant to Welfare and Institutions Code section 366.26.[2] Father's sole contention on appeal is that the Tulare County Health and Human Services Agency (agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about the children's possible Indian ancestry.[3] The agency denies error, but argues that if we find error did occur, the error should be found harmless.

For the reasons discussed herein, we find the department and the juvenile court erred and, consistent with our recent decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) __ Cal.App.5th __ , __ [2022 Cal.App. Lexis 923] (*E.C.*), we conclude "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re*] *A.R.* (2021) 11 Cal.5th [234,] 252–254 [(*A.R.*)].)

---

[1] Father and mother are also parents of three younger children (X.C., E.C., and C.C.), who are part of the same dependency proceedings but are not part of this appeal.

[2] All further statutory references are to the Welfare and Institutions Code.

Additionally, we note that section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to the issue raised on appeal.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, **4–5].)

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### I.     Petition and Detention

On March 10, 2020, mother was in a vehicle accident with P.C. Mother was suspected to have been under the influence at the time of the accident. P.C. sustained severe injuries and was paralyzed from the waist down. The parents had a history of domestic violence, and there was a restraining order protecting mother and the children from father. The children were detained about a week later, but P.C. remained hospitalized. R.C. was initially placed in a resource family home, but was then placed with non-related extended family member Crystal J., who is the godmother to one of the children's siblings.

On March 18 and 19, 2020, social workers asked mother and father if they had Indian ancestry, which they both denied. They both signed Parental Notification of Indian Status forms (ICWA-020) declaring the same. The social worker filed an Indian Child Inquiry Attachment form (ICWA-010(A)) stating the children had no known Indian ancestry.

On March 19, 2020, the agency filed a petition on behalf of the children pursuant to section 300, subdivision (b)(1) (failure to protect).

On March 20, 2020, the juvenile court held a detention hearing. The court asked mother and father if they had Indian ancestry, which they both denied. The court found ICWA did not apply.

---

[4]     Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

## II.      Jurisdiction and Disposition

The jurisdiction/disposition report stated ICWA did not apply.  The report outlined the agency's previous inquiries and the juvenile court's finding that ICWA did not apply at the detention hearing.

The report also revealed the children had a 16-year-old half sibling who was residing in Bakersfield at a confidential address with a relative.

In May 2020, P.C. was still in the hospital and the agency was looking for placement options following his release.  Crystal could not take placement of him because she was already caring for five children; however, the agency had located a prospective resource parent.  Mother informed the social worker that P.C.'s godparents were willing to take placement of him and had provided them with the social worker's contact information.  The social worker asked mother why she had not shared this information earlier when she had asked mother multiple times if there were family members that were willing to take placement of him.  Mother said she did not think there were any family members who would be willing to care for him full time.  That same day, the agency proceeded to approve the prospective resource parents for placement so that they could begin visiting P.C. at the hospital and begin training for his hospital release.  The following day, P.C.'s godmother, Monica M., contacted the social worker and reported she and her husband wanted to take placement of P.C.  The social worker completed the relative assessment questionnaire with her over the phone, but the godparents were ultimately denied placement.

On July 13, 2020, the juvenile court conducted a combined jurisdiction and disposition hearing.  Mother, father, and Crystal were present, but the hearing was continued.

On August 26, 2020, the juvenile court found the allegations in the petition true, found the children were persons described by section 300, ordered the children removed

from parental custody, ordered reunification services for both parents, and found there was insufficient reason to believe that the children were or could be Indian children.

## III.    Six-Month Review

The six-month status review report stated ICWA did not apply and repeated the information about the agency's inquiries from March 2020 and the juvenile court's finding from the detention hearing.

On February 24, 2021, at the six-month review hearing, the juvenile court found both parents had made minimal progress toward alleviating or mitigating the causes necessitating placement and ordered that they continue receiving reunification services.

## IV.    12-Month Review

The 12-month status review report stated ICWA did not apply and repeated the information about the agency's inquiries from March 2020 and the juvenile court's finding from the detention hearing.

In March 2021, R.C. requested a change of placement. She was moved from placement with Crystal and placed in the same resource family home as P.C.

On May 12, 2021, at the 12-month review hearing, the juvenile court found both parents had made moderate progress toward alleviating or mitigating the causes necessitating placement and ordered that they continue receiving reunification services. The court ordered services to continue because there was a substantial probability the children would be returned to their care within six months. They had consistently contacted and visited the children, had made significant progress in resolving the problems that lead to removal, and demonstrated the capacity and ability to complete the objectives of their treatment plans and to provide for the children's safety, protection, and physical and emotional well-being.

## V.    18-Month Review

The 18-month status review report stated ICWA did not apply and repeated the information about the agency's inquiries from March 2020 and the juvenile court's finding from the detention hearing.

In November 2021, mother reported father was living with paternal grandmother.

On February 28, 2022, at the 18-month review hearing, the juvenile court found that the parents had made minimal progress toward alleviating or mitigating the causes necessitating placement, terminated reunification services, and set a section 366.26 hearing.

## VI.    Section 366.26

The section 366.26 status review report stated ICWA did not apply and repeated the information about the agency's inquiries from March 2020 and the juvenile court's finding from the detention hearing, but added that there had been no new claims of Indian ancestry.

On July 11, 2022, at the section 366.26 hearing, the juvenile court terminated parental rights.

On July 26, 2022, father filed a notice of appeal.

## DISCUSSION

## I.    ICWA

### A.    Background

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th

6.

566, 594, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *9–10], fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.]  The Legislature's 'primary objective … was to *increase* compliance with ICWA.  California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.  [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10].)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.]  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements.  [Citations.]  Those changes became effective January 1, 2019 ….' [Citation.]  Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10–11].)

## B.    Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [county welfare] agency nor the court plays any role in making that determination.  [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *11–12].)

7.

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' "[5] (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare [agency] pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[6] Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the

---

[5]     Section 224.2, subdivision (k), was amended by Assembly Bill No. 2960 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to our discussion in this case.

[6]     "Courts have recognized it is somewhat inaccurate to refer to the agency's ' " 'initial duty of inquiry' " ' [citation] because the duty ' "begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings' [citation]. However, in this case, like many others, an ICWA inquiry was made only of the parents and after the juvenile court found ICWA did not apply at the detention hearing, no further information was gathered. Given that our discussion on error … focuses on the first step of the inquiry and does not involve the duty of further inquiry or notice, we use the term duty of initial inquiry." (*K.H.*, *supra*, 84 Cal.App.5th at p. 597, fn. 10.)

court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;]  [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).)  "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

II.    Analysis

A.    Summary of ICWA Inquiry

The record reflects mother and father denied Indian ancestry when the agency conducted ICWA inquiry in March 2020 and both filled out ICWA-020 forms denying the same.  The agency filed an ICWA-010(A) form stating the children had no known

Indian ancestry. At the detention hearing, mother and father testified they did not have Indian ancestry and the juvenile court found ICWA did not apply. However, there is no indication that ICWA inquiries were made of anyone else even though mother and father had relatives and interested persons who were in contact with the agency or were mentioned in reports, including Crystal, the children's half sibling who was residing with a relative, Monica, and paternal grandmother. (§ 224.2, subd. (b).) In addition, R.C. was 14 years old and P.C. was 12 years old at the commencement of the dependency proceedings. (*Ibid*.)

Father argues the agency and the juvenile court failed to comply with their duties of inquiry under ICWA and, therefore, the matter must be remanded for compliance. The agency denies there was ICWA error. Alternatively, the agency argues that if we find that error did occur, that any such error should be found harmless and urges us to apply the standard articulated in *Benjamin M.*, *supra*, 70 Cal.App.5th 735. The agency contends there was no readily obtainable information that was likely to bear meaningfully upon whether the children were Indian children. (*Id*. at p. 744.)

Recently, in *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the four general approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *4–5].) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the agency's error is prejudicial and remand for the agency to conduct a proper, adequate, and duly diligent inquiry is necessary.

B.    Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the

10.

evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, __Cal.App.5th __ [2022 Cal.App. Lexis 923, *17].) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18].)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *18].)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse

of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18–19]; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19].)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "[a]n appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citation.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19–20].)

### C.    Agency and Juvenile Court Erred

#### 1.    Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare [agency] …, the county welfare [agency] … has a duty to inquire whether [the] child is

12.

an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the court[ or the county welfare agency] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the county welfare agency] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

County welfare agencies "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[7]

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

Here, the agency inquired only of mother and father, which fell short of complying with the plain language of section 224.2, subdivision (b), or failed to document its

---

[7] All further references to rules are to the California Rules of Court.

inquiries in its reports in contravention of rule 5.481(a)(5). "We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.' [Citation.] [County welfare agencies] and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once [county welfare agencies] provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

"[T]he law demands more than merely inquiring of [m]other and [f]ather" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)). There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) But that is not the case here, because the agency at the very least was in contact with Crystal and Monica who were interested parties within the meaning of section 224.2, subdivision (b). "On a well-developed record, the court has relatively broad discretion to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *43].)

Under these circumstances, the agency did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b) & (e).) As a result, the juvenile court's finding that ICWA did not

14.

apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### D. Prejudice

"Where, as here, the deficiency lies with an agency's duty of initial inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *32–33].)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *33].)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[8] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an

---

[8] *People v. Watson* (1956) 46 Cal.2d 818, 836.

outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ....' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37].) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 609; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34].) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34–35].) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37–38].) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an

16.

Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38], quoting *K.H.*, at p. 591), and " 'requiring adequacy as the law directs "is generally the only meaningful[ ] way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38–39], quoting *K.H.*, at p. 609.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *40].) Here, the agency's inquiry, limited only to mother and father " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *42], quoting *K.H.*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *41], quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to

ensure the agency conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *44], quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [R.C. and P.C.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the agency. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *44–45], quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order terminating parental rights is affirmed.